Judge BuciiNMi,
delivered the opinion of the court.
O?» a note, executed by J. H. Bigger as’ principal and J. l inn as smety,'to Sharp, the obligee recovered a judgment. Execution having issued, the debt was replevied.
An execution, issued on the replevin bond, was placed in (he hands of Stratton, (the appellee,) as sheriff of Simpson county, who, failing to return it within the time required by law, and Sharp having threatened to sue him for his official defalcation, paid the amount to Sha;p. This execution was returnable in March, ibdh. In May, 1836, the following endorsement was made on it. ‘’This execution is for the u.e and benefit of Tilomas L. Stratton. Thomas M. Smith, attorney’ for plaintiff.” No ether attempt to coerce payment from the d ‘fondants in the execution, seems to have been made, until in November, 182b, when Finn, the surety, requested Stratton to issue a second execution, and make the amount out of Rigger’s property, informing him, at that time, that he, Finn, would not pay it, unless compelled by ¡aw; insisting that, by the improper conduct of Stratton, in failing io levy the execution, formerly in his hands; and permitting of :er-\ of later date, to lie levied on the property of .Bigger, he *365 was released. An execution was accordingly issued on the succeeding day, and was dolivced to the s. o iff of tüe corny; Stratton,having previously gone cut of oflice. Some shorn, time, before the day on which it was .0 be returned, the sheriff informed Stratton, that he cordd not find any property belonging to Bigger, on winch to levy it; and inquired of him, what he should do.
Sira! ion then directed him to levy on a house and lot clamed by Finn; bu„ afterwards directed nim not to levy on it, and to return it, which he dal, with the followng endorsement “returned by order of plaintiff, Jan.ia¡\ 9ih, L8¿i.” In February, i827,a third execution having been issued and levied on Finn’s property, he died his bill in chancery against S.ration, &c. praying for an injunction.
lie alleges in his bdi, that whilst Stratton had the ill-; »’ v xeculion, issued on the replevin bond,,in his hands, Bigger owned and had property in possession, ou. of which, the debt could have been easily made; a.id that it was actually levied on a par; of it; but, that Stratton, uudpr sane agreement between him and Bgger, failed to rem.n t!»c trufa of the case, and thereby, permitted an execution,of subsequent date,in favored another person, to be levied on it.
Stratton, in : is answer, does not expressly deny, that theamoun+of the execution imgithare been made by a sale of Rigger’s p.operty, at ihe time alluded to. bul says, that all of it, except two horses, some stock, and household furniture, w as encumbered by liens to an amount gveatiy above its value, and that the greater portion of that which was unincumbered, was legally exempt from execution, lie denies, that he made a levy, as alleged by f inn.
f'y an amendment to his bill, Finn charges, that when the second execution was hi the hands of the officer, an arrangement was made between Rigger, his principal, and Stratton, wahoil hi-; consent or knowledge, whereby, indulgence, as 10 time, .vas extended to Rigger, and that, '.hereupon, the sheriff, by o ’der of Siration,had returned the execution, as staid, by order of plaintiff.
When the am<'"nt of an execution 1ms' been paid by remised himself liable by his official dehe is entitled to tbs plain- _ manji a„a ’ may me the ptunüíf’s qainstaMof th“ ecution,ieeK" whether they be principals or su’ell£S'
*366 Upon ibis, he relies, as amounting to a discharge in ' equity, of his responsibility as surety.
Stratton, by his answer to the amended bill, positively denies, that in directing the execution to be returned, lie was influenced by any such consideration, as that alleged. He denies, that he entered into any agreement, d>rcctly or indirectly, with Bigger, on the subject; and says, that Finn having made propositions to him, to scble the debt, the sheriff, who had the execution in his hands, applied to him for directions with, respect to the course he should pursue, informing him., that he could not find any property, belonging to Bigger, on which to levy it. He then informed the sheriff of the propositions made to him by Finn, and directed him not to levy on his property; and if he could not find property of Bigger, to return it without levying.
Upon a hearing of the cause, the circuit court, entered a decree, dismissing the bill with costs, from1 which, Finn has appealed to this court.
In the argument of this case, the following points were presented for consideration.
1st. Has a sheriff, who has paid to the plaintiff in an execution, the amount of it, having rendered himself liable therefor, by his official defalcation respecting it, a right to use the plaintiff’s name, to coerce payment for his own indemnity, by causing an execution to be issued and having the amount collected from one, who was merely a surety of the principal debtor?
2d. If he has such a right, was Finn entitled in equity, to a release, because Siratton failed to levy the first execution issued on the judgment, whilst it was in his hands as sheriff?
3d. Can Finn he relieved on account of the indulgence alleged to have been extended by Siratton to Bigger, after the second execution had been issued, and winch was returned by his, Stratton’s directions, without a levy?
In the case of Bruce against Dyall, V Mon. 128, it was decided, that a sheriff is entitled to a beneficial im terest in the demand against a defendant, in an execu *367 tion, where the plaintiff has recovered against him its amount;, and that such officer should be allowed to use the name of 'he plaintiff in such execution, for the purpose of making the money out of the estate of the defendant. In support of that opinion, the case of Harrison vs. Harrison, I Litt. 137, is cited. Whether the case cited, supports the doctrine advanced, we shall not stop to inquire, because the doctrine is fully •settledin the case in Monroe, and we are not inclined to doubt ítá correctness. The right of the oflicer to occupy by substitution, the place of a plaintiff in an execution, to whom he has paid the amount, is founded on principles of unquestionable justice. The plaintiff in the execution, having placed it in his hands for collection, has a right to demand from him a faithful discharge of his duty. If he fails to perform it, the most that can, with propriety, be demanded from him, is the payment of the debt, and the damages prescribed by the statute. But after he has paid those sums, the judgment on which the execution issued, still remains undischarged. The payment made by him, was not i» discharge of the judgment, but of his responsi-hillty. Execution may consequently be issued on it. Who shall be entitled to the money when collected? Certainly not the plaintiff in such execution, for the officer has paid him the full amount. The money is to he collected in his name, but he cannot, with any degree of plausibility of justice, demand it of the officer, who had already paid him all that he claimed. The officer is therefore permitted to retain it. But it has been insisted that this doctrine, although applicable to the case of a principal defendant, cannot he reasonably extended to a surety; that the right of the officer to use the name of the plaintiff, ami demand the money from the principal defendant,. is based on the fact, that he has paid the debt of such, defendant, and has, therefore, in justice, a claim against him. This position cannot be supported. It seems to he founded upon Ihe supposition, that the officer has discharged the debt due by defendant to the plaintiff in the execution. Were that true, no execution could properly issue on a judgment which had been discharged by payment; but the admission, that an execution can he properly issued on it, notwithstanding the ad *368 v ancomont of the money by the sheriff, shows, that suc*1 ^dviinccment does no'c affect the validity of the Suppose iho plaintiff therein, demands execution fos bis own benefit, can the defendantwhether they be both principals, or one be principal and the other a smoty, bo relieved, in any way whatever, on account of the plaintiff’s having held the officer responsible ? We flunk not. They-have no rigid So complain that they have been compelled to comply with their contract. What disposition may be made of the money collected in discharge of the judgment against them, cannot be a matter of any importance lo either of them. They have, therefore, no right to inquire into it. It is their duty to pay the money due on the judgment ; justice declares what disposition shall be made of it. when paid, and we cannot perceive the ground on which a defendant, who was a surety, would have a belief right than his principal lo urge that he ought not to he compelled to pay it, because the officer would have a right to retain it.
.4 tiieriff, who lias an execution in his hands against several defendants, is not bound to inquire, which oi the defendants in the execution were principals and which sureties in the bond, on w ich, the the judgment was reeover-
With respect lo the second point, the doctrine contended for, that Finn is entitled to relief on account of Stratton’s failure to levy the execution, has not: been supported by the production of any authority, and cannot be maintained by any satisfactory course of-reasoning. it, does not certainly appear that the sheriff' could, at the time alluded to, have made the money out of Rigger’s property.
Buf, if it be conceded that he could have done it, it does not follow that his failure opeiated to discharge Finn. lie was noi. bound to inquire, w. o was principal -and who a surety in the bond, on which, the judgment was obtained. If nigger, being principal, was solvent when the execution alluded to was in Si Hilton's hands a- sheriff, mid before the second execution ¡-sued, became iiuolvoní, (he failure of ihe officer to levy on the property of Bigger may have operated to.the. loss . judgment. The plni right to enforce it, and the fact of his having received the amourt from Ntraiton, can neither at law, nor in chancery, discharge the appellant.
*369 Stratton at the time of the alleged negligence, ha'd sic interest in the execution. His omission to levy does "not seem to have been the result of any fraudulent intention to injure Finn; but of negligence, by which he became liable to the plaintiff-in the execution, but not to ■ the appellant, who, did not point out any property of his principal to the officer, nor request him to levy the execution. If he negligently omitted tó take steps proper to insure his own safety, he has no right to look to the sheriff for indemnity.
As to the third point, it-may be remarked, that were the allegations of the amended bill, fully supported by proof, the propriety of granting the rehef sought would be clear; but the appellee, by his answer, expressly demies that he entered into any comract whatever with Bigger, allowing him further time to pay the money, and the proof relied on by the appellant, as establish'ing it, is by no means satisfactory. Bigger, whose deposition was read on the trial, who must have known the fact, if it existed, and whose disposition to rescue Finn from loss is evidently displayed, does not state that any such contract or arrangement was made. He says, that after the sheriff had the execution in hand, he .(Bigger) asked Stratton what directions he intended to give concerning it? to which he replied, that Finn had requested him to have it issued if he intended to look to nim for the money. He (the witness) adds, “ he then directed the sheriff to return the execution on my telling him I would pay him the money in a short time, or as soon as I collected some money that was due me in Huntsville.” If this statement truly represents the facts of the case, Stratton might have caused another execution to have been issued immediately. It would not • have been a violation of any contract between him and Bigger; for it does not appear that any contract had ■.been made between them. The truth of this statement moreover, depends on ids unsupported deposition.
(But it is not, in those cases only, where the collection of the debt has been procrastinated by agreement between the plaintiff and- the principal defendant in the ■execution, that the chancellor has granted relief to the surety. In the case of Norton, &c. vs. Roberts, &c. IV Mon. 492, it is said that, “ where the creditor, by ■virtue of-some agreement or act done, (not by mere *370 passive indulgence) gives time to the principal, or increases risk of the surety,, without his assent to he bound by this agreement or act, the surety will be discharged.”
But there is no proof shewing that Stratton performed any act calculated to increase the risk of the appellant. The sheriff who had the execution, which he returned “staid by order of plaintiff,” gave his deposition, and swears that Stratton did not direct him not to levy on the property of Bigger. He had endeavored in vain, to find his property on which he might levy, and it was but a short time previous to the return day of the execution, and after he had told Stratton of his failure to get any property belonging to Bigger, that Stratton dir ected him to return it. It is most probable that in giving that direction he was influenced, not by what had passed between him and Bigger, but, as he says, by propositions from Finn to settle the matter amicably.
If the sher iff who had the second execution is to be believed, and we see no reason for doubting his veracity, had he levied it, he would have taken the property of the appellant. Indeed, Bigger states that in the latter part of the year 1826, he had no property. But whether he had any is perhaps not very important. The proof in the cause shows very clearly, that Si rat-ton did not prevent the sheriff from levying on his property if he had any. He merely directed him to return the execution, after the officer had informed him ■of hisinability to getany property oftheprincipal defendant to levy on. We cannot see any thing improper in this; nor in theleast calculated to increase the risk of the surely. So far from it, wc consider it an act of friendly forbearance by the appellee towards the appellant, and as ovidenceof a desire on his part to spare him, ifpossible, without producing a loss to himself.
If Bigger had property which could have been subrjecled to execution, Finn might have pointed it out to the officer, who would, we have no doubt, have levied upon it. But the appellant did not make any such attempt, and he has now no cause to complain that Stratton did not permit the sheriff to levy on his property.
Crittenden and J. T. Morehead, for appellant; Ewing, for appellee.
On the whole case, we are satisfied witlv the decree of the circuit court, which must be affirmed with costs. 3
Note. — Judge Underwood did not sit in this cause,
J. J. Crittenden, as counsel for Finn, filed the following petition for a re-hearing. .
The counsel for Finn, believing that the decision of this court, on one of the principal questions presented by the record, deserves a re-consideration, respec fully petitions for, and solicits a re-hearing of the cause.
Having- decided that Stratton, the sheriff, by pay* ment to the plaintiff in the execution which he had failed to levy, acquired an interest in the judgment, and a right to use. the plaintiff’s name to enforce it by other executions, the. court proceeds to tire second question which it makes in.the cause, and it is in relation to this point, that the opinion of the court is believed to be erroneous. The proposition it maintains, is, in substance this, that, although Finn was but the surety of Rigger, although Bigger, at the. time the first execution was in Stratton’s hands, had-.property subject to that execution, and sufficient for its satisfaction; and although Stratton failed, and neglected to levy that executions, whereby, that property was otherwise disposed of, and in consequence of it, and of' the total insolvency of Bigger, the debt was thrown upon: Finn, the security; yet, that Finn shall abide the loss,.and pay the debt, not for the use of the plaintiff in the executions, but for the use of the delinquent sheriff.' The very proposition seems to conflict with our instinctive notions of justice and equity.
If the nominal plaintiff in the execution remained unsatisfied, and was seeking satisfaction by other execution, it would be no ground of defence against him, that the sheriff had neglected to levy a prior execution; and why? because the plaintiff was not to blame for that neglect, he had no part or agency in it, and his rights ought not, therefore, to be affected by it.
But it is precisely upon the same principle of reasoning, that the rights of the delinquent sheriff are a# *372 fected when lie comes to take the place of the plaintiff and to use his name for his own benefit. It was in consequence of the plaintiff's failure to levy the execution that he became liable for the amount to the plaintiff. Ilis failure to levy it was a wrong to the plaintiff; his failure to levy it on the property of Bigger, the principal debtor was a wrong to the security, Finn, at least, in equity. This court has decided at the present term (in the case of Pope and Davidson, as well as recollected.) that a sheriff ouu'ht. in such cases, to levy first upon the property of the principal, Src.
When S..ratton had atoned for his wrong to the plaintiff in the execution, by payment to him, he was, in the language of the court, “substituted” to the place of the plaintiff. But surely he did noi by this imaginary change of attitude, escape from the consequences of the wrong done to the security Finn. Stratton’s right to use the execution, is merely an equitable, right, deduced by this court, from principles of abstract-justice. Equity gives him all the right he has, and, of course, he is to exercise that right, only so far as he can do it equitably. It would be paradoxical to suppose, that equity upon mere principles of justice, would imply a right, to be used against conscience. How far, then, might Stratton equitably exercise his implied right of suing out execution? f-s to Bigger, the principal debt- or in tue execution, it might be exercised without any injustice, because he was not, and could not have been prejudiced by Stratton’s failure to levy the execution.
Bui would it not be- against conscience and equity, to exercise this right against Finn? We think it would,
Finn was but the surety of Bigger; that fact, it is true, did not appear, upon the face of the note, nor was it apparent from t :e record of the suit and judgment founded upon the note. But this can operate nothing, as it is very evident that Stratton knew that Finn was but the surely of Bigger. He did know that Bigger was in failing circumstances. He did know while ihe execution was in his hands, that Bigger had some property' uninoümííeiikd, upon which it might he levied, and from the terms of his answer, it is fair to infer, that the w hole amount of the execution might have, been made *373 out of Bigger’s estate. Yet, with all his knowledge, he fails to make any levy; he holds up the exfcuion.for more than one year; and after Bigger’s total insolvency, he, (having in the meantime settled with the plaintiff in the execution,) renews the execution for his own benefit, and attempts to make Finn pay it. In every step of this transaction, Stratton violated his duty as an officer, and the positive injunctions of the law; and the manifest consequence of it has'been a loss to Finn, of the whole amount of the debt, if he should be compelled to pay it. Bigger is unable to pay any thing. Stratton has paid Sharp, the plaintiff in the execution, as he was bound in consequence of his delinquency to do. And now, he or Finn must bear the loss, it is a question de evitando damno; and to be settled upon principles purely equitable.
Of such a question, it is argument enough to, say, that the loss has been occasioned by Stratton’s misconduct and breach of official duty, and that, therefore, he ought to bear the loss. No principle of law or equity is known of, that will allow Stratton to shelter himself from the responsibility of his own acts, under the name of the nominal plaintiff in the execution. When equity gives him the right to use that name, it gives it to him to be used for equitable purposes, and to an equitable extent only; and it gives it to him, affected by all the consequences of his own acts. This would seem to be among the plai est dictates of reason and equity; no argument can be clearer.
The situation of Stratton with the execution in his hands, as an officer, is not like that of the holder of a note or bond with surety. Such a holder, though restrained from so acting, as to increase the risk of the surety, is under no obligation or injunction of law to act at all. He may, therefore, forb ar to sue or to take out execution after judgment; and if by his forbearing and failing to act, the principal debtor should become insolvent, and a loss thereby devolve on the surety; the surety must bear it. Though admitted to be the consequence of the holder’s forbearance, it is as to the surety, a “damnum absqu>, injuriathat is, it is a “loss” .fallen on him, without any legal fault or “wrong” done on the part of the holder of tne note or bond. His failing to prosecute earlier his claim, was no wrong *374 or injury, simply, because he was under no obligations' or le§al injunction, so to prosecute it. But the situation of Stratton, with the execution in his hands, was exactly the reverse of that of the supposed holder of a ncqe or bond. It was his duty to act upon the execution; his duty to the public, who are all concerned in the faithful discharge of his office. The positive commands of the writ and of the law,injoined it upon him to levy the execution. If Finn must now pay the .debt, it is clearly a loss brought upon him, by Stratton’s breach of positive-■ official duty; and shall he say to Finn, (when the question comes between them, who shall bear the loss;) it is a mere “damnum absque injuria?n Can he, with truth, say it is a loss that has fallen on you without any wrong or breach of legal duty on my part? If he cannot say this, he must bear the loss himself. Stratton’s breach of duty in not levying the execution, was an injury, not only to the plaintiff in the execution, but to the defendant, Finn. It manifestly increased his risk; and it has undeniably thrown a loss upon him, if he is now to pay the debt to Stratton. But the court say, that Stratton’s negligence was no injury to Finn. Admit that it was not, per se, an injury. It is converted into one, when Stratton after-wards attempted to coerce payment from him. When a plaintiff himself stays' his execution, and grants time to the defendant, who is the principal debtor* he cannot be said thereby, to have done an injury to the other defendants, who were but sureties; but a subsequent attempt of the plaintiff to enforce his demand against the sureties, would be injurious and inequitable, and would be restrained by a court of chancery.
If, after the levy of an execution on the property of the principal defendant, to be discharged by order of the plaintiff, we know that he can never afterwards enforce that demand against those defendants, who were but sureties. Equity will prevent it. But, suppose that the sheriff himself, without the order of the plaintiff, discharges such, a levy, and returns the property to the principal defendant.. This unlawful act of the sheriff, could not perhaps be urged against the plaintiff in the execution, because it was without his order; but is there any reason why the sureties might not urge it against the sheriff, when he, by payment to *375 the plaintiff, becomes virtually a plaintiff himself? It seems to me, that in this supposed case, the sheriff would have just as much right to enforce the demand against the sureties, as Stratton has, in this case, to enforce it against Finn, and that the reasoning of the court applies as well to the one case as to the other.
The court says, that Stratton’s “omission to levy, does not seem to have been the result of any fraudulent intention to injure Finn; but of negligence, by which he became liable to the plaintiff in the execution, but not to the appellant who did not point out any property of his principal to the officer, nor request him to levy the execution.” To this, it may be answered, that Stratton knew that Bigger had property; he admits, in effect, that he knew tlie property, and might have levied upon it, and surely, therefore, he ought not to complain, that Finn did not point it out to him. Whether Stratton’s failure to levyj was the result of “any fraudulent intention,” would not seem to me to be very material. ■ The cause must be decided upon his acts, and their legitimate consequences he must bear, whatever his intention may have been. In an analagous case, the plaintiff who grants indulgence to the principal debtor, from the besi of motives, shares in law, the same fate with him who grants it from the worst. The sureties in both instances, are discharged.
It is material in this case to remember, that Stratton held up the execution for more than a year. And when, during that period, he was urged by Smith, the plaintiff’s attorney, to proceed with its execution, and told that he would be made liable for his failure of duty, he disregarded it all, and said, “there was no danger of his paying it, as John H. Bigger was good for it.” (See Smith’s deposition, page, 27.) This testimony goes far to condemn Stratton, both as to his acts and motives, especially when his character as a public officer is considered. It shows that he relied on Bigger for his indemnity. Let him adhere to that reliance, and not now indemnify himself, for his own misdeeds, at the expense of an innocent security.

*376
Judge Buckner delivered the following response of the. court to the petition for a re-hearing.

The petition for a re-hearing inti ¡is case, attacks the second position 'assuoie.1 by the coart. in the opinion delivered; and insists, that ahhoigh rhe obligee of a note executed by principal and -nreij, is not under obligation to sue, or to iake oui. execution, wacre he shall have obíained judgment, and 'hat, although the surety must bear all loss occasioned by such omission, yet the situation of Stratton, with the execution in his hands, was very different, and that his failure to levy it, produced very difievent consequences, as it relates to the claim for a release on the pari, of Finn; because such failure was a breach of official duty, and an injury to him. That Stratton’s failure to levy the execution was a breach of official duty is undeniable; for it was in consequence of that breach of duty, that he subjected himself to Sharp, the plaintiff, in the execution.
But we must acknowledge, that we do not perceive upon what process of correct reasoning, the conclusion results, as a consequence, from that circumstance, that it was.also a violation of duty cowards Finn. The duty incumbent on a sheriff to levy an execution, which hd has in hand, is imposed upon him, not for the benefit of the-defend ints .therein, whether they be principals or sureties, but for that of the plaintiff, who alone has a right to complain of its violation. What should be the consequence of the obstinate refusal of an officer to ■levy an execution, when requested by a surety, is a question which does not arise i.n the present case. It is not, ho .vever, true, that the defalcation of the officer in failing to levy, must be considered as an injury to a surety; nor is there the slightest reason to apprehend, that, in the case under consideration, Finn was, at the time Stratton held tiie execution, dissatisfied with the course which he pursued, it often happens in such cases, that a surety, who is defendant in the execution, would be pleased at the om’ssion of the officer to make a levy, because it might eventually redound to his benefit. Suppose that Stratton, at the time he held the execution,had determined upon the most prompt compliance with its mandate,, and had immediately levied *377 it upon Finn’s property. Had he not a right to do so? It cannot be denied, although it should be conceded that had it been equally convenient for him to have made the amount out of Bigger’s property, if he knew that he was the principal, and he had determined to make a levy, it would better accord with our notions of propriety, that he should have done so. But, in all' such cases, the officer acts upon the dictates of his own judgment, and according to his own sense of justice.
Bigger and Finn were both defendants in the execution, issued on a judgment entered against both of them, and it is very probable, from the situation of Bigger’s property, that had Stratton made a levy, it would have been on the property of Finn, an act which he had not requested, and certainly could not have desired. But if the argument urged by his counsel be correct, that it was the imperious duty of the officer to levy on the property of Bigger, leaving that of Finn untouched, had the amount of the execution been made out of the latter and the officer failing to return it for more than one month after the return day, had been compelled to pay the money with the penalty prescribed, to the plaintiff, ¡Sharp, would not Finn have been entitled to a return of it from Stratton, who, according to the doctrine insisted upon in the petition, would,in such event, have produced, by his official misconduct, the loss sustained ? and, surely, such a position cannot be maintained. Stratton’s right to use the execution, it is said, is merely equitable, and should be enjoyed to an equitable extent only. As between Sharp and Stratton, the right of the latter to issue the execution for his benefit, may be said to he equitable, and it is not proper to insist that any right should be enjoyed, when equity forbids it; but we are still of opinion, that there is nothing in the record to show, that Finn ought to be released;' wherefore the petition is overruled.